United States District Court
Southern District of Texas
**ENTERED**
June 27, 2023
Nathan Ochsner, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| Estate of Donald | § | |
| Franklin Oderkirk, Jr., | § | |
| and Jacqueline Oderkirk, | § | |
|     *Plaintiffs,* | § | |
| | § | |
| v. | § | Civil Action H-21-301 |
| | § | |
| Michael Thomas Oderkirk Lewis, | § | |
| Denise Louise Oderkirk Ryan, and | § | |
| Wendell Cox, | § | |
|     *Defendants.* | § | |

## MEMORANDUM AND ORDER

Pending before the court are Plaintiffs Estate of Donald Franklin Oderkirk, Jr., (Estate) and Jacqueline Oderkirk's (Jacqueline) Motion for Partial Summary Judgment, ECF No. 61, and Defendants Michael Thomas Oderkirk Lewis (Lewis) and Denise Louise Oderkirk Ryan's (Ryan) Motion for Partial Summary Judgment, ECF No. 62.

The parties consented to the jurisdiction of the undersigned magistrate judge, and the district judge transferred the case to the undersigned for all further proceedings, including entry of final judgment. ECF Nos. 51–52. As discussed below, each of the summary judgment motions is **GRANTED IN PART AND DENIED IN PART**.

### 1. Background

This dispute between family members arose after the death of Donald Franklin Oderkirk Jr. (Decedent) over distributions from the Donald Franklin Oderkirk Jr. Trust (Decedent's Trust).

On April 28, 1994, trustors Donald F. Oderkirk and Virginia Lee Oderkirk executed the Restatement of the Donald F. Oderkirk

and Virginia Lee Oderkirk Family Trust[1] (Family Trust). ECF No. 61-4.[2] The Family Trust estate included, in addition to other assets, membership interest in Cuyamaca Quad, LLC, which is "in the business of commercial real property rental." ECF No. 61-2 at 10 *see also* ECF No. 61-1.

The Family Trust stated that, "[f]ollowing the death of the surviving Trustor," the Family Trust "shall terminate and all assets constituting the trust estate . . . shall be distributed in trust to Wendell S. Skinner and [Defendant Ryan] as Co-Successor Trustees for distribution[.]" ECF No. 61-4 ¶ 6.2. The Family Trust directed that the trust estate be divided into four equal shares. *Id.* ¶ 6.2.2. Defendant Ryan's and her two sisters' shares were to be distributed free of trust. *Id.*

Decedent's share, however, was to be held in trust with Skinner and Defendant Ryan as co-trustees for the distribution to Decedent "as the trustees deem necessary to provide for [Decedent's] medical care and medical expenses[.]" ECF No. 61-4 ¶ 6.2.3(a). The Family Trust further required:

> The share maintained for the benefit of [Decedent] shall be retained in trust for a period of ten (10) years from the date of death of the surviving Trustor. At the expiration of ten (10) years the trust shall terminate and all undistributed income and principal shall be distributed to said beneficiary free of trust.

*Id.* ¶ 6.2.3(b). About Decedent's share, the Family Trust also stated that, "should [Decedent] die prior to receiving full distribution of

---

[1] The record reflects that the Family Trust is also referred to as the Virginia Oderkirk Family Trust. *See, e.g.*, ECF No. 61-8 at 1; ECF No. 61-9 at 1; ECF No. 62-10 at 2; ECF No. 62-3 at 2. The parties appear to agree on the terms of the Family Trust, regardless of name.
[2] The court's Family Trust citations list paragraph, subparagraph, sub-subparagraph sequentially as applicable.

his trust, then, the share to which he would otherwise be entitled shall be distributed to [Defendant Ryan] to be held and distributed at her discretion to [Decedent's son]." *Id.*

The Family Trust restrained every beneficiary from "participating, encumbering or alienating all or any part of his or her interest in the trust estate," protected the beneficiaries' interests from liabilities, obligations, judgments, bankruptcy proceedings, and legal process. ECF No. 61-4 ¶ 8.9. The Family Trust also mandated that "[a]ll income or principal shall be payable and deliverable only and personally to the respective beneficiaries entitled thereto." *Id.* "The provisions of [the Family Trust] shall be construed liberally and in the interest of and for the benefit of the income beneficiaries." *Id.* at ¶ 8.22.

Virginia Lee Oderkirk died in 1997. ECF No. 62-8 at 2. Donald F. Oderkirk, Decedent's father and the last surviving trustor under the Family Trust, died on March 23, 2005. Def. Ryan's Dep. v.1 at 19–20, ECF No. 61-3. Under the terms of the Family Trust, Decedent's Trust (or the Trust) was created in 2005 and funded with assets that included membership interest in Cuyamaca Quad, LLC, as well as stocks and bonds. *See* ECF Nos. 61-6, 61-7. Decedent's Trust assets were held in a Morgan Stanley account, and Dan Haskard and Jennifer Werve were the financial advisors on the account. *See* Def. Ryan's Dep. v.1 at 37, 51; ECF No. 61-7 at 1; ECF No. 61-9 at 1. Pursuant to the terms of the Family Trust, Defendant Ryan and Skinner[3] served as co-trustees of Decedent's Trust. *See* ECF No. 61-4 ¶ 6.2.3.

During the ten years following the death of Decedent's father, Decedent's Trust received all disbursements from

---

[3] Skinner died while Decedent's Trust was in effect, leaving Defendant Ryan as sole trustee. *See* ECF No. 61 at 12.

Cuyamaca Quad, LLC. Def. Ryan's Dep. v.1 at 74. Defendant Ryan, in her role as trustee, allowed Decedent one distribution from the Trust for dental care but denied Decedent a lump-sum distribution for the purchase of a home. Def. Ryan's Dep. v.2 at 25–26, ECF No. 61-5.

In July 2013, eight years into the existence of Decedent's Trust, Defendant Ryan authorized the purchase of an annuity through Jackson National Life Insurance Company (Jackson NLIC) on behalf of the "Virginia Oderkirk Family Trust"[4] as the owner and beneficiary. *See* ECF No. 61-8 at 1; ECF No. 61-10 at 1. It identified Decedent as the annuitant. *Id.* The initial premium for the annuity was $250,000. *Id.* In August 2013, Defendant Ryan submitted an Annuity Service Request purporting to change the annuity beneficiary to Defendant Lewis as irrevocable primary beneficiary and herself as contingent beneficiary. ECF No. 61-11. The request form identified Defendant Lewis as the son and Defendant Ryan as the sister of the owner, which remained identified as the Family Trust. *Id.* at 4. The only signature on the request form was that of Defendant Ryan who identified herself as trustee. *Id.* at 5. It does not appear that the change in beneficiaries became effective at that time. *Cf.* Def. Ryan's Dep. v.2 at 22–23 (stating that Defendant Ryan did not have documentation that Decedent wanted to leave everything to Defendant Lewis).

According to the language in the Family Trust creating Decedent's Trust, the latter terminated in March 2015, ten years after the death of his father, the last surviving trustor of the

---

[4] Although Plaintiffs and Defendants agree that the Donald Franklin Oderkirk Jr. Trust is the name of Decedent's Trust, various documents refer to it by other names. *See, e.g.,* ECF No. 61 at 10; ECF No. 61-7 at 1; ECF No. 61-8 at 1; ECF No. 61-9 at 1; ECF No. 61-10 at 1; ECF No. 61-26 at 1; ECF No. 62 at 7. The court reads no meaning into the inconsistent name usage.

Family Trust. ECF No. 61-4 ¶ 6.2.3(b) (stating that, after ten years, "the trust shall terminate and all undistributed income and principal shall be distributed to [Decedent] free of trust"). On March 17, 2015, Defendant Ryan resigned and appointed Decedent to replace her as trustee for the "Oderkirk Family Trusts." ECF No. 61-17 (stating, in a letter to Morgan Stanley, that she was resigning and appointing Decedent to replace her); ECF No. 65-2 at 2 (stating that Morgan Stanley accepted her resignation and appointment of Decedent); *see also* Def. Ryan's Dep. v.1 at 18, 37–38 (stating that she resigned in March 2015); *but see id.* at 51 (stating that she did not go through the process of formally appointing a successor trustee). Decedent signed the document accepting the position of trustee. *Id.* According to Defendant Ryan's deposition testimony, she took no action as trustee of Decedent's Trust after her resignation. Def. Ryan's Dep. v.1 at 37–38, 51–52; *see also* Def. Ryan's Dep. v.2 at 9. However, Defendant Ryan remained identified as trustee on the annuity statements and correspondence. *See* ECF No. 61-18 at 1; ECF No. 61-19 at 1.

Defendant Ryan testified that she believed that Decedent's Trust was set up to last ten years and terminate but that it did not terminate. *Id.* at 36. Defendant Ryan explained her belief: "[Decedent] made his own Trust at that point or kept this Trust going. He didn't stop it and I didn't stop it either. I didn't terminate it." *Id.*; *see also* Def. Ryan's Dep. v.2 at 7–8; *but see* ECF No. 61-12 at 5 ("Defendant [R]yan does not dispute that the Trust terminated 10 years after the death of the last remaining settlor[, and thereafter] the Trust assets flowed to Decedent.").

On April 13, 2015, Decedent signed a Morgan Stanley Smith Barney document entitled "Fiduciary Certification and Trust Account Agreement" stating that the name of the trust to which it applied was "Donald Oderkirk TTEE of the Donald & Virginia

5

Oderkirk Family [T]rust u/a DTD 3/9/1978[.]" ECF No. 61-26 at 1. Decedent was identified as the "Grantor(s)/Trustor(s)" in the body of that document. *Id.*

Defendant Ryan testified that she did not specifically tell Decedent that the Trust had terminated. Def. Ryan's Dep. v.1 at 41. She stated that she told Decedent that his share was in their parents' trust and referred him to Haskard and Werve for information about his finances. *Id.* at 40–41, 51. Defendant Ryan also arranged for the Cuyamaca Quad, LLC disbursements to be sent directly to Decedent instead of to the Trust. *Id.* at 51, 74, 81; *see also* Def. Ryan's Dep. v.2 at 5 (agreeing that Decedent was receiving disbursements); ECF No. 61-15 (showing partner disbursements directly to Decedent); ECF No 61-16 at 1 (showing 2018 disbursement amount to each listed partner, including Decedent). About the annuity, Defendant Ryan testified that Decedent "knew about it and never changed it." Defendant Ryan's Dep. v.2 at 39.

On September 6, 2018, Haskard contacted Jackson NLIC and confirmed that Denise Ryan was listed as trustee on the annuity. *See* Audio Recording, Ex. T, at 0:17–0:28. On September 11, 2018, Haskard contacted Jackson NLIC again, this time to verify the beneficiaries on the annuity. *See* Audio Recording, Ex. U, at 0:43–2:26. Because the beneficiary of the policy had not been changed to Defendant Lewis, Defendant Ryan signed a beneficiary designation supplement as "Trustee" naming Defendant Lewis as the beneficiary. *See* ECF No. 61-20. On September 13, 2018, Jackson NLIC sent Defendant Ryan a confirmation that the annuity beneficiary had been changed from the Family Trust to Defendant Lewis. ECF No. 61-19 at 1.

Decedent died on October 17, 2018. *See* ECF No. 61-21 at 1. At the time, Decedent was married to Jacqueline, who was

appointed the personal representative of Decedent's Estate. *See* ECF No. 62-6; ECF No. 62-11, *Oderkirk v. Ryan*, No. 20CA0119, at 1–2 (Colo. App. Feb. 11, 2021). Defendant Ryan testified that, after Decedent's death, she notified Haskard at Morgan Stanley and told him that "according to my parent's Trust, everything goes to [Defendant Lewis]." Def. Ryan's Dep. v. 1 at 99. She testified that she was "gung ho set to make sure that" Decedent's share went to Defendant Lewis because she believed that was her parents' and Decedent's wishes. *Id.* at 100.

In November 2018, Defendant Lewis submitted a variable annuity death benefit claim form to Jackson NLIC. ECF No. 62-6. On November 16, 2018, Defendant Ryan communicated to Cuyamaca Quad, LLC, that disbursement checks should be sent to Defendant Lewis. ECF No. 61-22. A little more than a year later, Defendant Ryan emailed the managing member of Cuyamaca Quad, LLC, as trustee for the Family Trust, to confirm that Defendant Lewis was to receive disbursements under the Family Trust. ECF No. 61-23.

Decedent's Estate and Jacqueline filed this action in January 2021 "to recover certain assets belonging to [Decedent's Estate] for proper estate administration and distribution wrongfully converted." ECF No. 1 at 1. Plaintiffs' Second Amended Complaint raises claims for:

- conversion and theft against Ryan and Cox for using their authority under the Family Trust to convert Decedent's assets for the benefit of Defendant Lewis;
- civil conspiracy against all Defendants for conspiring to convert Decedent's assets for the benefit of Defendant Lewis;
- breach of fiduciary duty against Ryan for transferring assets from Decedent's Trust into the annuity and for representing herself to be the trustee of Decedent's Trust after she resigned in order to designate Defendant Lewis as beneficiary of the annuity;

7

- spousal elective share under Colorado probate law; and
- declaratory judgment stating that Decedent's Trust terminated by its own terms in 2015.

ECF No. 59 at 7–16.

### 2. Summary Judgment Standard

"Summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmovant, 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 167 (5th Cir. 2018) (quoting Fed. R. Civ. P. 56(a)). No genuine issue of material fact exists if a rational jury could not find for the nonmoving party based on the complete record. *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 455 (5th Cir. 2019) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

Initially, "[t]he movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–25 (1986)). If this burden is met, the nonmovant must then "go beyond the pleadings," using competent summary judgment evidence to cite "specific facts" showing a genuine issue for trial. *McCarty v. Hillstone Rest. Grp., Inc.*, 864 F.3d 354, 357 (5th Cir. 2017) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

The court views all evidence and reasonable inferences "in the light most favorable to the opposing party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The court, however, does not have a duty "to search the record for material fact issues." *RSR Corp. v. Int'l Ins.*

*Co.*, 612 F.3d 851, 857 (5th Cir. 2010) ("Rather, the party opposing the summary judgment is required to identify specific evidence in the record and to articulate precisely how this evidence supports [the] claim.").

"[C]onclusory allegations, unsubstantiated assertions, [and] 'only a scintilla of evidence'" are not enough to defeat a properly supported motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). Nor is the "mere existence of a scintilla of evidence" sufficient; "there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### 3. Plaintiffs' Objections to the Evidence

On summary judgment, a party may object to exhibits that "cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2); *LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016) (quoting Fed. R. Civ. P. 56(c)(2)) ("At the summary judgment stage, materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'").

Citing Federal Rule of Evidence 802 and Texas Rule of Civil Procedure 601(b)(3), Plaintiffs object to four portions of Defendant Ryan's deposition testimony, arguing that all four contain "inadmissible hearsay to prove what Decedent knew or did not know[.]" ECF No. 63 at 10–11 (citing ECF No. 62-5 at 5, 8, 11).

In the objected-to statements, Defendant Ryan claimed that she knew Decedent's wishes and he knew hers regarding the disposition of the trust assets after Decedent's death. *See* ECF No. 62-5 at 5, 8, 11. Because the court has not relied on these

statements to resolve the issues before the court on summary judgment, the court overrules Plaintiff's objections.

Plaintiffs also object to an email from Jay-Marie to Defendant Ryan and others and to a letter from Harold G. Ayer to Amos L. Soigner. ECF No. 63 at 11 (citing ECF Nos. 62-7, 62-8). Plaintiffs argue that these pieces of correspondence contain hearsay. *Id.* (citing Fed. R. Evid. 702, 802). The email quotes Ayer's legal opinion on the interpretation of the Family Trust's provision about the termination of Decedent's trust. ECF No. 62-7 at 2. The letter contains Ayer's legal opinion on the interpretation of another provision of the Family Trust about the distribution of Decedent's share to Defendant Lewis. ECF No. 62-8. The court is responsible for interpreting the Family Trust in the context of this case and thus is not relying on Ayer's legal opinion. Plaintiffs' objections are overruled at this point as moot.

### 4. Summary Judgment Analysis
### A. Jacqueline's Standing

Defendants ask the court to find as a matter of law that Jacqueline generally lacks standing to bring, in her individual capacity, claims of conversion, fraud, breach of fiduciary duty, and declaratory judgment on the termination of the trust. Notably, Defendants do not challenge Jacqueline's standing to bring a claim against a proper defendant to assert her right to a portion of Decedent's estate.

"[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). "[I]t often turns on the nature and source of the claim asserted." *Id.* Subject matter jurisdiction "extends only to 'Cases' and 'Controversies.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (quoting U.S. Const. art. III, § 2). Constitutional "[s]tanding to sue is a doctrine rooted in the traditional

understanding of a case or controversy" and is an "essential component[] of federal subject matter jurisdiction." *Id.* at 338; *McCall v. Dretke*, 390 F.3d 358, 361 (5th Cir. 2004).

The party invoking subject matter jurisdiction has the burden to prove standing. *Spokeo, Inc.,* 578 U.S. at 338. When standing is challenged on summary judgment, a plaintiff must set forth evidence of specific facts establishing her standing to pursue the claims asserted. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013). The elements of constitutional standing are that the plaintiff: "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc.,* 578 U.S. at 338. To establish an injury in fact, the plaintiff must have suffered "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). A particularized injury is one that affects the plaintiff "in a personal and individual way." *Id.*

Defendants argue that the claims that Jacqueline raised in her individual capacity should be dismissed because the "purported ownership rights, harms, fiduciary relationship, and damages" underlying her tort claims and request for declaratory judgment belong to Decedent's Estate, not her personally. ECF No. 62 at 23. Citing *Gutierrez v. Stewart Title Co.*, 550 S.W.3d 304 (Tex. App.—Houston [14th Dist.] 2018, no pet.), Jacqueline argues that she is the "sole beneficiary of Decedent's Estate" and thus "has a vested interest in all of the property properly belonging to the Estate." ECF No. 63 at 41. She also argues that "Defendants' actions were in part directed by personal animus[.]" *Id.* at 41–42.

In *Gutierrez*, the Texas state court found that the provisions of a will created a life estate in real properties, prohibited the sale

of the property during the life estate, and named the plaintiff as one of the remaindermen. 550 S.W.3d at 315, 317. The court found that, as a remainderman, the plaintiff had established an injury in fact suffered from the conveyances of the properties during the life estate. *Id.* at 317.

Decedent's Trust itself shows that Jacqueline did not have any claim to its assets. There are no allegations or evidence that Jacqueline ever possessed any interest in Decedent's Trust, not even residual interest; that she was ever in a fiduciary relationship with Defendant Ryan; or that she ever had any right to enforce the terms of Decedent's Trust. Moreover, the acts giving rise to the claims in this case occurred prior to Decedent's death when any concrete and particularized injury was suffered by Decedent alone. Jacqueline has not shown that she has suffered injuries personal to her that can be traced to the challenged conduct of Defendants. Jacqueline argues that Defendant Ryan was motivated by animus against Jacqueline but fails to show under the law that animus could give rise to a personal injury.

Even though Jacqueline may be the sole beneficiary of Decedent's Estate, that alone does not give her standing to bring the claims in her individual capacity. Because the proper distribution of Decedent's estate is not yet determined, she fails to show that any threatened injury to her is *"certainly impending[.]" See* Clapper, 568 U.S. at 409 (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). "'[A]llegations of possible future injury' are not sufficient." *Id.* (quoting *Whitmore*, 495 U.S. at 158). Defendants do not challenge Jacqueline's standing to bring claims in her capacity as representative of Decedent's Estate.

Because Jacqueline fails to show that, as a matter of law, she suffered an injury in connection with the claims of conversion,

fraud, breach of fiduciary duty, and declaratory judgment on trust termination, she does not have standing to pursue those claims in her personal capacity. The court grants Defendants' summary judgment motion on those claims.

## B. Trust Termination

Plaintiffs ask the court to find as a matter of law that Decedent's Trust terminated by its own terms in March of 2015 and that title in the trust's assets vested in Decedent free of trust at that time. ECF No. 61 at 23–31.

As a preliminary issue, Texas enforces contractual choice-of-law clauses "if the law chosen by the parties has a reasonable relationship with the parties and the chosen state[] and the law of the chosen state is not contrary to the fundamental policy of the [forum] state." *Caton v. Leach Corp.*, 896 F.2d 939, 942 (5th Cir. 1990); *see also Hyde & Hyde, Inc. v. Mount Franklin Foods, L.L.C.*, 523 F. App'x 301, 305 (5th Cir. 2013). The Family Trust states that it was "accepted by the Trustee in California" and selects California law to govern "its validity, construction and all rights under it[.]" ECF No. 61-4 ¶ 8.2. Thus, California law applies in deciding proper construction of Decedent's Trust.

Under California law, "A trust terminates when . . . [t]he term of the trust expires." Cal. Prob. Code § 15407(a)(1); *see also San Pasqual Fiduciary Tr. Co. v. Holt*, G046003, 2013 WL 5952481, at *6 (Cal. Ct. App. Nov. 8, 2013). "At the termination of a trust, the trust property shall be disposed of . . . [a]s provided in the trust instrument." Cal. Prob. Code § 15410(a)(2). When the trust objectives are completed, "the title of the trustee ceases and the legal as well as the equitable title vests in the beneficial owner[.]" *Kauffman v. Lemmons*, No. G036055, 2006 WL 2798439, at *5 (Cal. Ct. App. Oct. 2, 2006). Title vests even if the trust assets are not distributed promptly. *See San Pasqual Fid. Tr. Co.*, 2013

WL 5952481, at *8 ("The trustee's delay in distributing [Decedent's] share cannot defeat his vested interest."); *see also Salvation Army v. Price*, 36 Cal. App. 4th 1619, 1624 (Cal. Ct. App. 1995) (finding that a twenty-year postponement in physical distribution did not affect the earlier vesting of title at the time the trust terminated).

About the termination of Decedent's Trust, the Family Trust explicitly states:

> The share maintained for the benefit of [Decedent] shall be retained in trust for a period of ten (10) years from the date of death of the surviving Trustor. *At the expiration of ten (10) years the trust shall terminate and all undistributed income and principal* shall be distributed to said beneficiary free of trust.

*Id.* ¶ 6.2.3(b) (emphasis added). Read in light of California law, the plain language of the italicized portion of Decedent's Trust shows that the trustors intended for the trust to terminate after ten years without regard to whether the trust assets had been fully distributed by that time. The trust language contemplated that there might be income and principal remaining in the trust at termination and directed that those assets would be distributed to Decedent.[5] Because the trust does not indicate otherwise, the trustors contemplated prompt distribution at the time the trust terminated. *See Mahan v. Rudnick*, No. F042773, 2004 WL 1560031, at *9 (Cal. Ct. App. July 13, 2004) (quoting *In re Taylor's Estate*, 66 Cal.2d 855, 858 (Cal. 1967) (stating that, absent any language to the contrary, a testator contemplates prompt distribution). Regardless of distribution, though, the trust

---

[5] By finding that title vested in Decedent by operation of California law, the court is not opining on any required actions necessary to document the title transfer or effectuate the distribution.

14

terminated in 2015, ten years after the death of the surviving trustor.

Defendants agree that "Decedent's Trust should have terminated[]" but argue that "Decedent elected to continue Decedent's Trust with his son, Michael Lewis, as beneficiary." ECF No. 65 at 10. Defendants argue that "whether Decedent elected to continue the Trust in 2015" is the controlling fact question in the case. *Id.* at 14. This argument ignores the plain language of the Trust. The trust terminated by its own terms under California law. Thus, Decedent could not have *continued* his trust. There was no trust for Decedent to continue. Whether he created a new trust is not an issue presently before the court. Defendant Ryan's failure to immediately distribute those assets to Decedent did not defeat the vesting of his legal and equitable rights to them.

Defendants also argue that any trust assets not distributed to Decedent before his death would go to Defendant Ryan for Decedent's son, not to Decedent's estate. Defendants argue that this is the case even though the Trust terminated. They base this argument on another provision of the Trust which states that Decedent's share was to be distributed to Defendant Ryan for Decedent's son if Decedent died prior to receiving full distribution. ECF No. 65 at 16–17. Taking the argument to its logical conclusion, according to Defendants, even if the trust terminated before Decedent's death, the assets remained in trust and Decedent had no legal or equitable right to them until the trustee transferred the assets into Decedent's name or otherwise liquidated the assets and distributed the proceeds to the Decedent. That is, the trustee could avoid distributing the assets to Decedent, deprive his estate of those assets upon his death, and transfer all the assets to Decedent's son instead—simply by delaying distribution. This argument misses the mark.

As discussed above, when the trust terminated ten years after the last trustor's death, legal and equitable rights transferred to Decedent automatically. The provision requiring undistributed assets to go to Ryan for Decedent's son would be triggered only if Decedent died before the trust terminated and there were as yet undistributed assets in the trust. At the time of Decedent's death in 2018, the trust no longer existed, and all its provisions, including the provision directing distribution to Decedent's son, were not longer in effect.

Plaintiffs have shown that no disputes exist about the trust language. The plain language of the trust states that it was to terminate. Decedent's trust terminated after ten years by its own terms on March 23, 2015. Thus, under California law, all interest in the trust corpus vested in Decedent at that time. The court grants Plaintiffs' summary judgment motion on this issue.

### C. Annuity Death Benefit

Defendants ask the court to find, as a matter of law, that the annuity death benefit belongs to Defendant Lewis, not to Decedent's Estate. ECF No. 62 at 12 (emphasis omitted). The parties agree that Colorado probate law applies to determine what is included in Decedent's Estate. *See* ECF No. 62 at 12 n.20; ECF No. 63 at 26–31. Under Colorado law, "[w]hether an asset is part of a decedent's estate is a question of law[.]" *In re Estate of Treviño* 474 P.3d 223, 227 (Colo. App. 2020). Colorado law provides an intestate decedent's surviving spouse with two options for how her share of the estate is determined. Defendants argue that, under either statutory scheme, the annuity, which Defendants refer to as

16

"Beneficiary Designated Account"[6] is not included. ECF No. 62 at 12.

Defendants offer attorney argument on the annuity's characterization under Colorado law but fail to point to evidence demonstrating that the annuity had the characteristics they attribute to it. The only evidence Defendants cite is Jackson NLIC's acknowledgement of Lewis's claim for the annuity death benefit. *See* ECF No. 62 at 15 & n.31 (citing ECF No. 62-15). Nothing in that document supports Defendants' characterization. Without the benefit of undisputed evidence, the court cannot assess where in the Colorado statutory schemes the annuity belongs. Defendants also point to the Colorado Legislature's consideration of a revision to one of its marital property statutes, which Defendants argue indicated an intention to exclude annuities from the probate estate. Defendants again rely only on attorney argument.

The court concludes that Defendants have failed to meet either of their initial summary judgment burden—to show that no dispute of fact exists or that they are entitled to judgment as a matter of law. The court therefore cannot decide on summary judgment whether Decedent's annuity is excluded from Decedent's estate under Colorado law and denies Defendants' summary judgment motion on this issue.

### D. Claims for Conversion, Theft, and Conspiracy

Defendants ask the court to find as a matter of law and undisputed fact that Plaintiffs' claims for conversion, theft, and conspiracy should be dismissed.

---

[6] The term "Beneficiary Designated Account" is not used in any document in evidence and is found only in Defendants' summary judgment brief.

Defendants argue that Texas state law applies to Plaintiffs' claims for conversion and theft and for conspiracy. ECF No. 62 at 15–18. Plaintiffs argue that Colorado and California law govern the tort claims under Texas's choice-of-law rules. ECF No. 63 at 32–36.

"The issue of which state's law governs is a question of law for the court to decide." *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 70 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (citing *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000)). "A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 65 (2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941), *superseded by statute on other grounds*). Under Texas choice-of-law rules, the first question is whether the applicable laws of the suggested states conflict on one or more issues in the case. *Orion Marine Constr., Inc. v. Coyle*, Civil Action No. 4:17-CV-00522, 2018 WL 1251873, at *1 (S.D. Tex. Mar. 12, 2018) (citing *Greenberg Traurig of N.Y., P.C.*, 161 S.W.3d at 69–70; *W.R. Grace & Co. v. Cont'l Cas Co.*, 896 F.2d 865, 874 (5th Cir. 1990)).

In Texas, the party asking the court to apply the law of another state "bears the burden first to show the existence of a true conflict of laws and then to demonstrate which law should apply." *Parker Drilling Mgmt. Servs., Ltd. v. Rockwell*, Civil Action No. H-19-1054, 2020 WL 3481569, at *6 (S.D. Tex. Mar. 11, 2020) (citing *Greenberg Traurig of N.Y., P.C.*, 161 S.W.3d. at 70). In the absence of a showing of a true conflict, "it is presumed that the foreign law is the same as Texas law[.]" *Id.* (citing *Greenberg Traurig of N.Y., P.C.*, 161 S.W.3d at 70; *Flagship Credit Corp. v. Indian Harbor Ins. Co.*, 481 F. App'x 907, 910 (5th Cir. 2012)). Absent a showing of a

true conflict, "'no choice-of-law analysis is necessary,' and [the court] simply appl[ies] the law of the forum state." *Mumblow v. Monroe Broad., Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) (quoting *Schneider Nat'l Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002)); *Greenberg Traurig of N.Y., P.C.*, 161 S.W.3d at 69–70.

If, on the other hand, a true conflict is demonstrated, the court determines which state has the most significant relationship to the occurrence and parties under the test outlined in the Restatement (Second) of the Conflict of Laws (Restatement) § 6, which lists factors to consider in resolving a conflict. *See Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979) (holding that "in the future all conflicts cases sounding in tort" are to be decided based on the Restatement's "most significant relationship" test).

Plaintiffs argue that the factors of the "most significant relationship" test favor the application of California or Colorado law over Texas law. ECF No. 63 at 32–36. However, as discussed, before reaching the "most significant relationship" test, Plaintiffs bear the initial burden of showing a true conflict on any pertinent issue to the case between Texas law and the law of either California or Colorado. *See Parker Drilling Mgmt. Servs., Ltd.*, 2020 WL 3481569, at *6.

In their second amended complaint, Plaintiffs pleaded that Defendants Ryan and Cox converted Decedent's assets, which, they assert, amounted to theft under Colorado law and conversion under the laws of Texas and California. ECF No. 59 at 7–8. Plaintiffs pleaded the civil conspiracy claim under both California and Colorado law. *Id.* at 8–9. Plaintiffs did not allege and do not argue now, much less demonstrate, the existence of any true conflict among the three states on conversion, theft, or conspiracy. This court is left to presume that the laws of Colorado and California are the same as Texas law and thus, for the purposes of

resolving the motions under advisement,[7] applies Texas law to Plaintiffs' claims for conversion and conspiracy.[8] *See Mumblow*, 401 F.3d at 620; *Parker Drilling Mgmt. Servs., Ltd.*, 2020 WL 3481569, at *6.

### i. Conversion

Texas defines conversion as "the wrongful exercise of dominion and control over another's property in denial of or inconsistent with his rights." *Johnson v. Kaufman Cnty., Tex.*, Civil Action No. 3:15-CV-3595-L, 2017 WL 978099, *6 (N.D. Tex. 2017) (quoting *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 210 n.44 (Tex. 2002)); *see also Automek, Inc. v. Orandy*, 105 S.W.3d 60, 63 (Tex. App.—Houston [1st Dist.] 2003, no pet.). A plaintiff must show that: (1) the plaintiff owned or had possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; (3) the plaintiff demanded return of the property; and (4) the defendant refused to return the property."[9] *Aries Bldg. Sys, LLC v. Vanguard Univ. of S. Cal.*, Civil Action No. 4:19-CV-03307, 2020 WL 9815996, at *1 (S.D. Tex. Aug. 28, 2020).

"Texas law recognizes an action for conversion of cash, so long as the cash is identifiable as a distinct chattel and the

---

[7] The parties may request that the court revisit this issue at the time of trial for purposes of jury instructions.

[8] The court notes that Plaintiffs offered arguments in support of their claims for conversion and conspiracy under Texas law.

[9] Plaintiffs did not plead a claim for theft under the Texas Theft Liability Act. The statute allows a party to bring a civil cause of action for theft on a "show[ing] that the defendant intended to unlawfully appropriate the property" in a manner described in certain provisions of the Texas Penal Code. *See* Tex. Civ. Prac. & Rem. Code §§ 134.002, 134.003.

conversion action is not simply an action for payment of a debt." *Gillum v. Gillum*, No. 00-10967, 2001 WL 1013168, at *2, (5th Cir. 2001); *see also Paschal v. Great W. Drilling, Ltd.*, 215 S.W.3d 437, 456 (Tex. App.—Eastland 2006, pet. denied). "An action for conversion of money will only lie where the money is (1) delivered for safekeeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by its keeper." *Paschal*, 215 S.W.3d at 456.

Defendants argue that Plaintiffs cannot maintain a claim for conversion of the annuity[10] because the property held in the annuity is money. *See* ECF No. 62 at 18–20. The evidence shows that Defendant Ryan delivered the money to Jackson NLIC for safekeeping of Decedent's trust funds, that the money was intended to be kept segregated, that it remained in an intact fund, and that it was not subject to a title claim by Jackson NLIC. *See* ECF Nos. 61-8, 61-10, 61-18. Thus, the money held in the annuity may be subject to a claim for conversion.

Defendants also argue that Defendant Lewis, as beneficiary of the annuity, was the contractual owner of the proceeds and that Defendant Ryan could not have converted the annuity because she never exercised dominion or control over it. *See* ECF No. 62 at 20–22. At a minimum, the evidence raises fact questions on both. *See, e.g.,* ECF Nos. 61-8, 61-10 (showing that Defendant Ryan purchased the annuity with assets from Decedent's Trust); Def.

---

[10] In Defendants' motion, they focus on the annuity but also argue that the Cuyamaca Quad, LLC's proceeds are money. *See* ECF No. 62 at 19–21. The court notes that Decedent owned a membership interest in Cuyamaca Quad, LLC. *See* ECF No. 61-1; ECF No. 61-2. To the extent that Defendants intended to argue that the interest in Cuyamaca Quad, LLC, was money not subject to conversion, they failed to establish that as a matter of fact or law.

Ryan's Dep. v.1 at 37–38; ECF No. 61-17; ECF Nos. 61-19, 61-20 (showing that Defendant Ryan executed a change of beneficiary designation on the annuity after resigning as trustee); ECF No. 61-24; ECF No. 62-6 (showing that Defendant Lewis filed a claim for and accepted the annuity benefit). Moreover, Defendants concede in the discussion of the theft claim that all parties in this case would agree that a dispute exists over ownership of the property. *See* ECF No. 62 at 21 ("If a bona fide dispute exists as to the ownership of the property—as the parties would all agree is the case here . . . .").

Because genuine issues of material fact exist, the court denies Defendants' summary judgment motion on Plaintiffs' conversion claim.

### ii. Conspiracy

The elements of civil conspiracy are: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Agar Corp. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019). Civil conspiracy is a derivative tort that "depends on some underlying tort or other illegal act. *Id.* at 140–41.

Defendants offer only one argument for dismissal of the conspiracy claim. They argue that, because Plaintiffs cannot survive summary judgment on their conversion claim, they cannot pursue their conspiracy claim without an underlying derivative tort. As discussed above, Plaintiff can maintain an action for conversion of the annuity, and the facts are in dispute. Moreover, as pleaded, the conversion claim relates to other assets that Defendants did not address in their motion. Thus, Plaintiffs may pursue their conspiracy to convert the trust assets.

Because the conversion claim survives summary judgment as an underlying derivative tort for the conspiracy claim, the court

denies Defendants' summary judgment motion on Plaintiffs' conspiracy claim.

### E. Breach of Fiduciary Duty

Plaintiffs ask the court to find as a matter of law and undisputed fact that Defendant Ryan owed a fiduciary duty to Decedent because he was a beneficiary of Decedent's Trust and Defendant Ryan was named trustee of Decedent's Trust.

As a preliminary matter, the court notes that neither party has shown that a true conflict exists among Texas, California, and Colorado laws on breach of fiduciary duty. To the contrary, the parties agree that the elements of breach of fiduciary duty are the same under the laws of all three states. ECF No. 59 at 9; ECF No. 61 at 33; ECF No. 65 at 19 & n.37. Thus, the court need not perform a choice-of-law analysis. The court will apply Texas law for purposes of resolving the instant motions.

"The elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant exists; (2) a breach by the defendant of his fiduciary duty; and (3) an injury to the plaintiff or a benefit to the defendant from the breach." *In re Mandel*, 578 F. App'x 376, 388 (5th Cir. 2014) (citing *Lundy v. Masson*, 260 S.W.3d 482, 501 (Tex. App.—Houston [14th Dist.] 2008, pet. denied). Texas law recognizes formal fiduciary relationships created by agreement as well as informal fiduciary relationships. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007).

Plaintiffs argue that Defendant Ryan breached her fiduciary duty by: (1) in August 2013, "attempt[ing] to change the beneficiary of Decedent's Trust from the trust itself to Defendant Lewis[;]" and herself as contingent beneficiary in August 2013; (2) failing to distribute Decedent's Trust assets free of trust in March 2015; (3) continuing to hold herself out as trustee after her

resignation; and (4) changing the annuity beneficiary designation from Decedent's Trust to Defendant Lewis in 2018. ECF No. 61 at 34–37. Defendants argue that fact issues preclude summary judgment.

Plaintiffs argue that Defendant Ryan exceeded her power as trustee of Decedent's Trust. However, Plaintiffs do not address how Defendant Ryan's actions exceed the powers given to the co-trustees by Decedent's Trust. The trust states that the co-trustees were "given sole discretion to distribute so much of the net income and principal as the trustees deem[ed] necessary to provide for the medical care and medical expenses for [Decedent]." ECF No. 61-4 ¶ 6.2.3(a). Although Decedent's Trust does not list the powers assigned to the co-trustees of the trust, it states that they "shall have all powers set forth in the California Probate Code Section 1120.2" as it was at the time it was executed and as amended. *Id.* ¶ 6.2.5. Plaintiffs do not identify those powers or point to evidence demonstrating Defendant Ryan's actions exceeded them.

The record contains much testimony and documentation about Defendant Ryan's actions from the time she assumed the role of trustee through the time of Decedent's death. *See, e.g.,* Def. Ryan's Dep. v.1 at 20; ECF No. 61-4 ¶ 6.2.3; ECF No. 61-8 at 1; ECF No. 61-10 at 1; ECF No. 61-11; ECF No. 61-17; ECF No. 61-20; ECF No. 65-2 at 2. This evidence, to the extent that it supports Plaintiffs' assertion that Defendant Ryan breached her fiduciary duty, is not *undisputed. See, e.g.,* Def. Ryan's Dep. v. 1 at 51, 74; ECF No. 65-2 at 2. Given the fact disputes in the record about Defendant Ryan's actions and whether any of her actions breached her fiduciary duty, the court must allow the jury to decide the issue at trial. Plaintiffs, as movants, have failed to demonstrate that no

dispute of material fact exists and that they are entitled to judgment as a matter of law on the claim.

Because genuine issues of material fact exist, the court denies Plaintiffs' summary judgment motion on their breach of fiduciary duty claim.

## 8. Conclusion

The summary judgment record raises genuine issues of material fact as to Plaintiffs' claims of conversion, conspiracy, and breach of fiduciary duty. Accordingly, Defendants' motion for summary judgment is **DENIED** as to conversion and conspiracy, and Plaintiffs' motion for summary judgment is **DENIED** as to breach of fiduciary duty. Because Jacqueline lacks standing to assert the tort claims and request for declaratory judgment, Defendants' motion on those claims to the extent brought in her individual capacity is **GRANTED**. Because Decedent's Trust terminated on March 23, 2015, Plaintiffs' motion for summary judgment is **GRANTED** as to that issue. Because questions of law and fact remain as to whether the annuity is excluded from Decedent's Estate, Defendants' summary judgment motion is **DENIED** on that issue.

Signed at Houston, Texas on June 27, 2023.

Peter Bray
United States Magistrate Judge